IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| John U. Wiesendanger, | : | |
| Linda H. Wiesendanger, | : | |
|    Plaintiffs, | : | Case No. 1:17-CV-286-JRG-CHS |
| | : | |
| v. | : | |
| | : | |
| MidAmerica Mortgage, Inc. | : | |
|    Defendant. | : | |

## **AMENDED** COMPLAINT

Come now your Plaintiffs, John U. Wiesendanger and Linda H. Wiesendanger (herein "Mr. and Mrs. Wiesendanger" or "Plaintiffs") by and through counsel, and for their Complaint against Defendant MidAmerica Mortgage, Inc., (herein "**MidAmerica**") would show this Court as follows:

### FACTS AND NATURE OF CASE

1. Plaintiffs are citizens and residents of Tennessee, having as their principal place of residence: 860 Tommie Lane, Soddy Daisy, Tennessee (herein, "the property").

2. Upon information and belief, **MidAmerica is an Ohio corporation** doing business in Hamilton County, Tennessee.

3. This Court has jurisdiction over the subject matter of this litigation

pursuant to Tennessee Code Annotated §16-11-101 and 102(a).

4. Venue is proper in this Court pursuant to Tennessee Code Annotated §16-11-114 and 20-4-101.

## BACKGROUND

5. On June 24, 2011, Plaintiffs executed a Note and Deed of Trust in favor of United Security Financial as the "Lender" and Mortgage Electronic Registration System ("MERS") as the "Beneficiary" under the Deed of Trust, with Old Republic Title Company named as trustee.

6. Thereafter the servicing of Plaintiffs' loan was transferred to Dovenmuehle Mortgage ("Dovenmuehle").

7. Plaintiffs continually made their required monthly payment, *on time*, but beginning in October 2013, Dovenmuehle refused to cash the payment checks or credit his account.

8. Eventually, Plaintiffs were able to contact a human at Dovenmuehle who requested that Plaintiffs submit three payments (October, November and December) and that would catch the account up.

9. Plaintiffs did so and on December 31, 2013, Dovenmuehle cashed this check and credited their account for $2,703.96, but *did not catch the account up; rather, the deposit went to a "suspense account" and the account remained delinquent.*

2

10. Plaintiffs continued to make their monthly mortgage payments, but Dovenmuehle did not cash any of the payments; eventually returning the payments for January through April.

11. Dovenmuehle then referred Plaintiffs' loan to Trustee for foreclosure, despite the fact that Plaintiffs had made ***all the required payments on time.***

12. After the foreclosure sale was scheduled, Plaintiffs retained counsel, who diligently tried to contact Dovenmuehle and Trustee to explain the mistake and make the payments.

13. Neither Dovenmuehle nor Trustee would communicate with Plaintiffs' counsel in order to correct the accounting errors with Plaintiffs' account.

14. Additionally, Plaintiffs' payment was increased from $856.00 per month to $985.00 per month, which Dovenmuehle claimed was due to an increase in Plaintiffs' property taxes. In fact, Plaintiffs' property taxes ***had not increased***.

15. Also, in the winter of 2013, certain frozen pipes burst on the property, causing damages for which the existing homeowner's insurance policy paid $7,500.00, for repairs due.

16. Plaintiffs forwarded this check to Dovenmuehle to negotiate in order to have the repairs done to the property.

17. Dovenmuehle cashed this check, but did not either pay to have the damages repaired or credit this money to Plaintiff's account.

18. Ultimately, Plaintiffs filed suit against Dovenmuehle.

19. During that litigation, Dovenmuehle cancelled the foreclosure sale and transferred this loan to **MidAmerica**.

20. Thereafter, Plaintiffs non-suited that case and attempted to reach Loan Care to reinstate the loan and have the repairs done to the property.

21. Loan Care did not respond to Plaintiffs inquiries; rather, **MidAmerica** referred the loan back to foreclosure.

22. Without notice to the Plaintiffs, **MidAmerica** scheduled a non-judicial foreclosure sale for August 24, 2017.

23. At this "sale", **MidAmerica** had a young man (with no experience or licensure) show up to read the foreclosure advertisement. This young man quelled any interest in the property (though approximately 20 people were there to bid) because he did not know how to perform an auction. In fact, he read the advertisement so quietly that no one attending the auction could hear him.

## COUNT ONE – WRONGFUL FORECLOSURE

24. A non-judicial foreclosure sale must conform to the statutory requirements set forth in T.C.A. §35-5-101, *et seq.*, the Tennessee Constitution. The Tennessee Constitution Article 1 §8 prohibits any man (or woman) from being "disseized of his [or her] freehold" without due process of law, and to the Deed of Trust executed by the Borrowers.

25. Specifically, non-judicial foreclosure sales in Tennessee are governed by T.C.A. §35-5-101, *et seq.,* which requires Notice to the Borrowers of any foreclosure sale. The Deed of Trust (at Paragraph 22) also requires such notice. The Borrowers claim that they received no notice of the scheduled foreclosure sale and only became aware of it when Defendant informed Plaintiff's counsel of the sale while Plaintiff's counsel was following-up with Defendant regarding the status of certain requests for information.

26. Additionally, the Deed of Trust at Paragraph 22 requires the Trustee, at public auction, to perform the sale of the property. The Deed of Trust makes no provision for an agent of the Trustee to conduct such sale. Moreover, the young man so failed to handle the requirements and duties of the Trustee that the "sale" was not a "public auction" at all.

27. The Defendant's actions in handling the foreclosure – in failing to provide notice to the borrower; in failing to have a competent Trustee handle the sale; and, in handling the sale in such an incompetent fashion that it did not amount to a sale at all – violated the terms of the Deed of Trust and therefore, the sale must be voided by this Court.

28. As well, the non-judicial foreclosure sale was handled so poorly that the irregularities are sufficient for this Court to set aside the alleged foreclosure sale.

29. Loan Care's actions in wrongfully foreclosing (or attempting to do so) on Plaintiff's home have caused severe damages, including, but not limited to, emotional distress, damage to their credit rating, and the threatened eviction from their home, and; Loan Care is liable to Plaintiffs for such damages.

## COUNT TWO – ACCOUNTING

30. The Note and Deed of Trust at issue herein are governed by the Real Estate Settlement Procedures Act (RESPA) and under RESPA, Defendant, as a servicer has a duty to accurately account for all payments received under this loan agreement.

31. Plaintiffs attempted to make all payments due on this loan, but their account has not been credited for these payments.

32. Plaintiffs demand an accurate accounting for the amounts actually paid on this loan so that a correct balance can be determined and this loan reinstated.

## COUNT THREE -- VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
## AND BREACH OF FIDUCIARY DUTY

33. The mortgage loan transaction was a federally related mortgage, governed by the Real Estate Settlement Procedures Act ("RESPA").

34. The maintenance of an escrow account for the payment of taxes and insurance after a borrower's default is governed by 12 U.S.C. § 2609 and CFR

§3500.17. Those sections allow a servicer to charge a borrower a monthly sum equal to one-twelfth of the total annual escrow payments that the lender reasonably anticipates paying from the account, plus a cushion of one-sixth of the estimated total amount due annually for taxes. To determine these amounts, the servicer may subtract any shortage then existing.

35. Defendant **MidAmerica** took the servicing rights and loan in this case subject to the errors committed by its predecessor, Dovenmuehle.

36. Defendant **MidAmerica** owed a fiduciary duty to Plaintiffs to properly maintain the account.

37. Defendant **MidAmerica** did not correctly calculate the amounts due on Plaintiffs' escrow account.

38. Defendant's failure to properly calculate the amounts due on the escrow account the payment to increase nearly 15%.

39. Defendant's failure to properly calculate the amounts due on the escrow account and its conversion of the insurance proceeds were violations of RESPA.

40. Defendant breached its fiduciary duty to Plaintiffs.

41. As such, Defendant is liable to Plaintiffs for all damages they have suffered in this manner; including, but not limited to, the loss of the quiet enjoyment of their home, emotional distress and humiliation from the foreclosure of their home, damage to their credit rating, and attorney fees.

WHEREFORE, Plaintiffs pray the following:

1. That proper process issue and be served upon the Defendant and that Defendant be required to appear and answer this Complaint within the time required by law.

2. That Plaintiffs be given judgment against Defendant.

3. That the costs of this action be taxed to Defendant.

4. Such other and further relief to which Plaintiffs may be entitled.

5. That any foreclosure sale or deed produced in furtherance thereof be canceled and an injunction be issued preventing Defendant or its agents from proceeding with any such sale.

Respectfully submitted,

s/Peter C. Ensign
Peter C. Ensign, BPR #017071
6111 Shallowford Rd., 105 C
Chattanooga, Tennessee 37421
423/510-0410
423/510-1395
ensign@ensigntitle.com